IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DONNA R. WEBB                                                                    PLAINTIFF

V.                                           NO. 09-5109

MICHAEL J. ASTRUE,
Commissioner of Social Security                                            DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Donna R. Webb, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**Procedural Background**

Plaintiff filed an application for SSI on July 27, 2006, alleging an onset date of October 15, 2005. (Tr. 84-85). The Social Security Administration denied the claim initially and upon reconsideration. (Tr. 46, 61-64, 47, 67-68). Pursuant to Plaintiff's request, a hearing was held on March 28, 2008, at which time Plaintiff and a Vocational Expert (VE) appeared and testified. (Tr. 13-44). On August 13, 2008, the ALJ entered her decision denying Plaintiff's request for a determination of disability. (Tr. 51-60).

In her written decision, the ALJ found as follows:

- Plaintiff had not engaged in substantial gainful activity since July 27, 2006, the application date;
- Plaintiff had the following severe impairments: Osteoarthritis and asthma;
- Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;
- Plaintiff had the residual functional capacity (RFC) to perform light work, except that while Plaintiff could frequently lift and/or carry ten pounds, and occasionally twenty pounds, push and/or pull within the limits for lifting and carrying, sit (with normal breaks) for a total of six hours in an eight hour work day, and stand and/or walk (with normal breaks) for a total of six hours in an eight hour work day, she could not stoop, operate motor vehicles as part of her work, or climb ladders, scaffolds, or ropes. The Plaintiff could only occasionally climb ramps and stairs, crouch, crawl, kneel or balance. She must avoid concentrated dust, fumes, smoke, chemicals, or noxious gasses. The Plaintiff must work where instructions were simple and non-complex; interpersonal contact with co-workers and the public was incidental to the work performed; the complexity of tasks was learned and performed by rote; the work was routine and repetitive; there were few variables; little judgment was required; and the supervision required was simple, direct, and concrete.
- Plaintiff had no past relevant work;
- Plaintiff was born in 1956, and was 49 years old, which was defined as an individual closely approaching advanced age, on the date the application was filed;
- Plaintiff had at least a high school education and was able to communicate in English;
- Transferability of job skills was not an issue because the Plaintiff did not have past relevant work;
- Considering the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform - Poultry Processing Workers and Housekeeper/Cleaner.

(Tr. 53-60). On April 9, 2009, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4).

**Evidence Presented**

Plaintiff was born in 1956 and completed high school. (Tr.18). Plaintiff complained of trouble walking, vision and breathing problems, arthritis in her hands, an inability to grip objects

-2-

and to straighten her fingers, her back hurting constantly, and possibly having asthma. (Tr. 113).

The records reflect that prior to the filing of her application, Plaintiff presented herself to Mercy St. Mary's Hospital with a cough on April 14, 2005, and was found to have pneumonia. (Tr. 144). Views of her chest showed no evidence for suspicious pulmonary consolidation, pulmonary edema, pneumothorax, or pleural effusion. (Tr. 145). There did appear to be some small calcified granulomas laterally in her right lung base on the frontal view, and there was a healed or healing posterolateral left ninth rib fracture suspected. The heart size was normal. (Tr. 145).

On September 26, 2006, a General Physical Exam was conducted for the Social Security Administration, and Plaintiff told the doctor that the main difficulty she had in working was the pain in her knees and back, with prolonged walking more than one mile or standing more than thirty minutes. (Tr. 146). The doctor diagnosed Plaintiff with OA mild; Hx asthma.[1] (Tr. 152). The doctor concluded that Plaintiff could sit, lift, carry, handle, finger, see, hear, speak, and that her mild ability to stand and walk "may be hindered 2° above Dx." (Tr. 152).

On July 24, 2007, x-rays of Plaintiff's thoracic spine revealed no fracture or loss of alignment, pedicles, and paraspinal lines appeared normal and no wedged compression was seen. (Tr. 167). There was some minimal anterior osteophyte formation found, and the radiologist concluded that Plaintiff had minimal osteoarthritis. (Tr. 167).

On July 24, 2007, Dr. Alice M. Martinson, from the Orthopaedic & Sports Medicine Clinic of Northwest Arkansas, examined Plaintiff for purposes of disability determination, and

---

[1] In his brief, Plaintiff's counsel stated that the "OA" diagnosis was presumably either osteoarthritis or obstructive apnea. (Plaintiff's brief at p. 2).

completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical). (Tr. 161-166). Dr. Martinson found as follows:

- Plaintiff could continuously lift up to 10 pounds, frequently lift 11-20 pounds, occasionally lift 21-50 pounds, and never lift 51 to 100 pounds;
- Plaintiff could carry continuously up to 10 pounds, frequently carry 11 to 20 pounds, occasionally carry 21 to 50 pounds, and never carry 51 to 100 pounds;
- Plaintiff could sit for 2 hours without interruption, stand 1 hour without interruption, and walk 1 hour without interruption;
- Plaintiff could sit for 8 hours in an 8 hour work day, stand 4 hours in an 8 hour work day, and walk 4 hours in an 8 hour work day;
- Plaintiff could continuously reach, handle, finger, feel and push/pull with right and left hand;
- Plaintiff could frequently operate foot controls with both feet;
- Plaintiff could occasionally climb stairs, ramps, ladders, scaffolds, balance, kneel, crouch, and crawl and never stoop;
- Plaintiff could continuously tolerate exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, vibrations and loud noise;
- Plaintiff could shop, travel without a companion, ambulate without using a wheelchair, walker, or 2 canes, walk a block at a reasonable pace, use standard public transportation, climb a few steps at a reasonable pace with use of single hand rail, prepare a simple meal & feed herself, care for personal hygiene, sort, handle and use paper/files.

(Tr. 161-166).

In her letter to the Social Security Administration dated July 25, 2007, Dr. Martinson reported that Plaintiff had sought no treatment for her complaints and was taking no medications at that time. (Tr. 159). Dr. Martinson found that on physical examination, Plaintiff sat with a very stoop-shouldered posture, spoke in a slow monotone with a rudimentary vocabulary, was very vague about the specifics of her complaints, and Dr. Martinson believed Plaintiff to be "remarkably and profoundly depressed." (Tr. 160). Plaintiff had generalized tenderness to pressure in the muscles of the neck, shoulder girdles, upper arms, forearms, back, buttocks,

-4-

thighs, and calves. (Tr. 160). Dr. Martinson further stated that the "triad of sleep disorder, depression, and widespread muscle tenderness is termed by some physicians as 'fibromyalgia.'" (Tr. 160). At the time of the examination, Dr. Martinson found that Plaintiff had no objective signs of physical abnormality which would warrant assignment of any permanent impairment rating, and strongly urged that Plaintiff have a formal psychological evaluation, since her depression appeared to be severe and most likely her most limiting factor. (Tr. 160).

On October 1, 2007, Mary Sonntag, Psy.D., completed a Mental Diagnostic Evaluation of Plaintiff and a Medical Source Statement of Ability To Do Work-Related Activities (Mental), for the Social Security Administration. (Tr. 168-174, 175-177). At that time, Plaintiff reported the only obstacles to treatment were the lack of money and insurance to afford it. Dr. Sonntag found that no obvious pain indicators were observed during the evaluation, and when asked to describe her mood, Plaintiff stated that it was "one that will get me by." (Tr. 170). Dr. Sonntag found Plaintiff's speech to be well within normal limits in terms of fluency and volume, although her speech pattern seemed to be slowed. Dr. Sonntag gave Plaintiff three assessments: an MMPI-2, designed to give diagnostic characteristics of adults; the Beck Depression Inventory-Second Ed.(BDI-II), to measure the severity of depression; and the Beck Anxiety Inventory(BAI), to measure the severity of anxiety symptoms. Dr. Sonntag found that the result of Plaintiff's MMPI-2 indicated that she produced an invalid profile, that Plaintiff scored in the "mild" range on the BDI-II, and that Plaintiff scored in the "severe" range of anxiety on the BAI. (Tr. 172). Dr. Sonntag believed that Plaintiff's anxiety was more of a generalized type than acute and did not see Plaintiff as "remarkably and profoundly depressed" as described by Dr. Martinson. Dr. Sonntag diagnosed Plaintiff as follows:

>Axis I: Major Depression, Recurrent, Mild Somatization Disorder
>Axis II: None
>Axis V: GAF+55

(Tr. 173). Dr. Sonntag also found that Plaintiff would have no problem communicating in an intelligible manner. (Tr. 173).

At the hearing held before the ALJ on March 28, 2008, Plaintiff testified that she lived with her adult son who paid the rent. She stated that she could only do a little bit at a time because she would get "really bad in my back and where it hurts to straighten up or[,] anything." (Tr. 27). She testified that she was not on any medication and that she had been told that she had asthma and had to be on a breathing machine. (Tr. 29). She further testified that it had been a few months since she used the breathing machine and that she tried to keep Claritin to help her breathe. (Tr. 30).

Plaintiff was involved in a motor vehicle accident in 1993 and sustained some injuries, but was released from the hospital the day of the accident. Plaintiff testified that she thereafter went to Zigular Chiropractic and "went to Dr. Howard, that's what I went there for because I told him about the accident and the pains." (Tr. 35). Dr. Howard gave her Vioxx. (Tr. 35). Plaintiff testified that she had breathing problems when she was little but it had gotten worse as she got older. (Tr. 35). She stated that during the day, she tried to do little things around the house and watched TV. She was able to drive, do the laundry, and do some cooking. (Tr. 104, 39).

The ALJ proposed a hypothetical to the VE, asking him to assume Plaintiff had demonstrated an ability to perform work at the light exertional level.[2] He added other

---

[2]Light work activity involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to

restrictions, stating: there should be no stooping, no driving as part of work activities, but there could be climbing of ramps and stairs, crouching, and crawling, and kneeling and balancing, all done on an occasional basis. He also said that the person should avoid concentrated dust, fumes, smoke, chemicals, and noxious gasses. He also wanted the individual to refrain from climbing scaffolds, ladders and ropes. The work was also to be non-complex with simple instructions, little judgment, work of a routine, repetitive type nature that could be learned by rote with few variables, no more than superficial contact incidental to work with the public and supervision, with concrete directives. (Tr. 41). The VE responded that there would be three positions in the poultry processing arena and also a position as a cleaner/housekeeper. (Tr. 42).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from

---

do substantially all of these activities. If someone can do light work, he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §416.967(b).

the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and, (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schwieker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

AO72A
(Rev. 8/82)

**Discussion**

Plaintiff raises two issues on appeal: 1) The ALJ's finding that Plaintiff is not disabled is not supported by substantial evidence; and 2) The ALJ did not fully and fairly develop the record. Plaintiff argues that the ALJ's decision is not supported by substantial evidence because it is based upon a VE's opinion that is inaccurate on its face. She argues that two of the three poultry processing positions cited by the VE involve constant exposure to "atmospheric conditions," including all manner of respiratory irritant, and that the housekeeping position requires occasional stooping, all of which were restricted by the ALJ in his hypothetical to the VE. In response to this argument, Defendant states that while Plaintiff is correct in her observation, she neglects to mention that the VE accurately identified one poultry processing job that she could perform, consistent with the DOT description of that job - poultry boner - which is classified as light work and which does not require exposure to any atmospheric conditions. The Defendant then proceeds to argue that since the VE testified that the three poultry processing jobs combined constituted approximately 8,000 jobs in the Arkansas economy and 360,000 in the national economy, in order to determine the number of the poultry boner jobs available in Arkansas and the national economy, one only need to reduce this number by two-thirds, leaving 2,600 poultry boner jobs available in Arkansas and 120,000 in the national economy.

The Court finds that Plaintiff is correct in concluding that based upon the limitations posed by the ALJ to the VE, only one of the jobs identified by the VE is a valid response. Two of the three poultry processing positions would constantly expose Plaintiff to atmospheric conditions, and the cleaner/housekeeper job would require stooping, which would be inconsistent with the restrictions imposed in the ALJ's hypothetical to the VE. Furthermore, the Court finds

AO72A
(Rev. 8/82)

Defendants' argument to be flawed. Without testimony from the VE as to how many poultry boner jobs exist in Arkansas and the national economy, it is mere speculation to simply reduce the total number by two-thirds and to state that the remainder is the number of poultry boner jobs that exist in Arkansas or the national economy. Accordingly, this matter must be remanded to the ALJ to request clarification and more specific information from the VE as to how many poultry boner jobs exist in Arkansas and the national economy.

The Court also finds it appropriate to instruct the ALJ to obtain a consultative examination of the Plaintiff by a rheumatologist to determine whether Plaintiff does, in fact, suffer from fibromyalgia, based upon Dr. Alice M. Martinson's comments referenced above, and to re-evaluate Plaintiff's RFC in light of the new report.

**Conclusion**

Based upon the foregoing, the Court finds it necessary to remand this matter to the ALJ to request clarification and more specific information from the VE as to the number of poultry boner jobs which exist in Arkansas and the national economy, and to obtain a report from a consultative examining rheumatologist regarding Plaintiff's possible fibromyalgia. Accordingly, the undersigned reverses the decision of the ALJ and remands this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

IT IS SO ORDERED this 29th day of March, 2010.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-10-

AO72A
(Rev. 8/82)